UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X
                    :

SHARICE DAVIS                 :        03 CV. 8868 (CSH)

           Plaintiff,        :

-against-              :       MEMORANDUM, OPINION AND
                             ORDER

                    :

MARY J. BLIGE, BRUCE MILLER,  :
RONALD LAWRENCE, KWAME
HOLLAND, DANA STINSON, AUSAR :
MUSIC, MARY J. BLIGE PUBLISHING,
BRUCE MILLER PUBLISHING, KWAME :
HOLLAND PUBLISHING, MARY J.
BLIGE MUSIC, DAYNA S. DAY    :
PUBLISHING CO., WARNER-
TAMERLANE PUBLISHING CO.,   :
UNIVERSAL MUSIC GROUP, INC.,
UNIVERSAL STUDIOS, INC.,    :
UNIVERSAL MUSIC PUBLISHING
GROUP, UNIVERSAL-MCA MUSIC  :
PUBLISHING, UNIVERSAL MUSIC &
VIDEO DISTRIBUTION, CORP., and :
MCA RECORDS, INC.,
                    :

          Defendants.     :

                    :
------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11-22-05

HAIGHT, Senior District Judge:

    This is an action asserting copyright claims under the Copyright Act, 17 U.S.C. §§101 et.

seq., a claim for declaratory judgment under 28 U.S.C. §2201, and state law claims for unfair

competition, unjust enrichment, and for consumer protection claims under the New York General

Business Law §§ 349 and 350.[1] Defendants move for summary judgment as to all of plaintiff's

---

[1] Plaintiff, in her complaint, asserted a claim for violation of Lanham Act §43(a). In Plaintiff's
Opposition to Defendants' Motion for Summary Judgment, plaintiff did not oppose the motion as
to the Lanham Act claim, and it is therefore considered withdrawn.

claims.

# I. BACKGROUND

The dispute in the instant action centers upon the release in 2001 of an album entitled "No More Drama" (hereinafter, the "Album"), performed by the defendant songwriter and recording artist Mary J. Blige. J. Davis Decl., Ex. A ¶ 25. Since its release, the Album has achieved triple platinum status. Page Decl., Ex. I. Plaintiff Sharice Davis alleges that two of the songs contained on the Album, "LOVE" and "Keep it Moving" (hereinafter referred to collectively or individually as the "Album Composition(s)"), infringe her copyright in two works of original authorship, "L.O.V.E." and "Don't Trade in My Love" (hereinafter referred to collectively or individually as the "Disputed Composition(s)"). Page Decl., Exhs. F & G. Specifically, Davis claims that the Album Composition "LOVE" is virtually identical to the Disputed Composition "L.O.V.E.,", and the Album Composition "Keep it Moving" bears substantial similarity to the Disputed Composition "Don't Trade in My Love." *Id.* The labels and packaging of the Album identify Blige, her brother Bruce Miller, Dana Stinson, Ronald Lawrence, and Kwame Holland as co-writers of the Album Compositions.[2] Complaint ¶¶ 62-63. Each of these defendants, along with their respective music publishing companies, also named as defendants, join the present motion for summary judgment as Moving Defendants.[3]

---

[2] Blige, Miller, Lawrence, and Holland are credited as co-writers of Album Composition "LOVE". Blige Miller, and Stinson are credited as co-writers of Album Composition "Keep it Moving."

[3] These defendants are: Ausar Music Publishing. Ltd. (Lawrence's music publishing company), Dayna's Day Publishing (Stinson's music publishing company), Warner-Tamerlane Publishing Corp. (publishing company that owns, controls, and/or administers Stinson's musical compositions), Universal Music Group, Inc., Universal Studios, Inc., Universal Music Publishing, Inc., Universal-MCA Music Publishing, Universal Music & Video Distribution Corp. (engaged in recording, publishing, distributing, marketing, and selling musical compositions and recordings, including Blige's musical compositions and recordings). J. Davis Decl., Ex. A ¶¶ 11,

The circumstances surrounding the creation of the Disputed Compositions are at issue. In deposition testimony, Davis conceded that the Disputed Compositions were co-authored by non-party Bruce Chambliss, defendant Miller's father. Page Decl., Ex. B at 22, 152, 156-62, 165, 172-3, 175-6, 278, 305. Davis registered the Disputed Compositions with the United States Copyright Office on two occasions, listing Chambliss as a co-author (one set bearing the date August 2, 2002, the other undated). J. Davis Decl., Exhs. B & C. In deposition testimony, Miller likewise asserts that Chambliss is the author of Disputed Composition "L.O.V.E." Page Decl., Ex. E at 226. Miller also presents two written agreements (hereinafter, the "Written Agreement(s)"), in which Chambliss assigns his rights in each of the Disputed Compositions to Miller. Chambliss Decl., Exhs. A & B. The Written Agreements are dated June 23, 2004, one day prior to Chambliss' deposition. The Written Agreements each provide that "[Bruce Chambliss] does hereby sell, assign, transfer and set over unto Bruce Miller d/b/a CWAB Music (SESAC), its successors and assigns, an undivided one hundred percent (100%) share in and to all of [Bruce Chambliss's] right, title and interest in the [Disputed Composition] of the universe-wide copyrights in and to the musical composition... IN WITNESS WHEREOF, [Bruce Chambliss] has duly executed this instrument of transfer as of the date I first create [sic] the above-referenced Composition..." *Id.* According to Defendants, the Written Agreements served to memorialize a prior oral transfer by Chambliss of all his musical compositions to Miller. J. Davis Decl., Exhs. E & F (Miller Tr. at 98-99, 106; Chambliss Tr. at 37-8, 114, 157, 166). Davis hotly contests the existence of any oral transfer. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 4-8, 14-15. The alleged oral transfer first came to light during

17-23.

the Miller deposition on December 9, 2003. Page Decl., Ex. E at 98-99.

Davis' Complaint alleges six claims. Davis' First Claim, for copyright infringement, asserts that Defendants engaged in unauthorized copying, distribution, sale and performance of Davis' copyrighted works and that such infringement was intentional, willful and with full knowledge of Davis' copyrights. She seeks both monetary damages and injunctive relief restraining Defendants and their agents from reproducing, distributing, or selling the Album or the Disputed Compositions.

Davis' Second Claim is a prayer for declaratory relief, requesting that the Court issue a declaration that Davis is owner of Album Composition "LOVE" and one-half owner of an undivided interest in Album Composition "Keep it Moving,' and as such is entitled to one hundred percent of the royalties generated in connection with Album Composition "LOVE," and fifty percent of all royalties generated in connection with Album Composition "Keep it Moving."

Davis' Third Claim for violation of Lanham Act §43(a), asserts that Defendants falsely designated the origin of their goods in interstate commerce by falsely identifying and misrepresenting the authors of the Album Compositions. Davis seeks injunctive relief and damages.

Davis' Fourth Claim, for unfair competition, asserts that Defendants knowingly and willfully confuse the public "by creating the false and misleading impression that the [Disputed Compositions] were authored by persons other than Davis." Complaint ¶ 99.

Davis' Fifth Claim alleges unjust enrichment against defendants Blige and Miller.

Davis' Sixth Claim asserts violations under the New York General Business Law, claiming that defendants' acts were intentionally designed to mislead the public by creating the

4

false impression that Disputed Compositions were authored by persons other than Davis, conduct which constitutes deceptive acts and practices in the conduct of trade and commerce and false advertising in violation of §§ 349 and 350 of the New York General Business Law.

Defendants move for summary judgment as to the copyright infringement claim on the basis of the Written Agreements. Defendants contend that these agreements reflect an assignment of Chambliss' copyright interests to Miller, who, thereby possessing the rights of a co-author, cannot infringe the copyright as a matter of law.

Davis resists the motion as to all aspects, with an exception as to her Third Claim for relief under the Lanham Act. Davis did not reply to Defendants' motion for summary judgment as to this count.

## II. DISCUSSION

For the reasons that follow, I grant defendants' Motion for Summary Judgment as to all Davis' claims.

## A. Standard of Review on Motion for Summary Judgment Pursuant to Rule 56

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Cattrett*, 477 U.S. 317 (1986). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed

facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995). The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If there is "any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party," then summary judgment should be denied. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

## B. Copyright Infringement

The defendants' motion rests upon Chambliss' alleged transfer to Miller of his rights in the Disputed Compositions. The defendants contend that Chambliss orally transferred these rights sometime between late 1998 and early 1999, and that this oral transfer was ratified by the Written Agreements between Chambliss and Miller, signed on June 23, 2004. The Copyright Act requires that transfers of copyright ownership be made in writing. 17 U.S.C. §204(a). The writing requirement may be satisfied, however, by the copyright owner's subsequent execution of a writing confirming the earlier oral agreement. *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, No. 80 CIV. 2242, 1984 WL 2120, at *2 (S.D.N.Y. Jan. 31, 1984); *Dan-Dee Imps., Inc. v. Well-Made Toy Mfg. Co.*, 524 F.Supp. 615, 618 (E.D.N.Y.); Melvin Nimmer & David Nimmer 1

6

Nimmer on Copyright §6.10 (2005) (hereinafter "Nimmer"). The first question, then, is whether or not an oral agreement did in fact exist between Chambliss and Miller.

A number of inconsistencies are apparent in the testimony describing the alleged oral transfer and subsequent written confirmation. Most significant of these is Chambliss' testimony as to the timing of the alleged oral transfer. Chambliss claims he was motivated to sign over his rights in all of his musical works to his son because he knew he would be going to prison. Chambliss was incarcerated for six and a half months prior to or in 1997 and again from March 2001 until the spring of 2003. Page Decl., Ex. L at 6-7, 15-16, 39. The earlier incarceration took place before the creation of the Disputed Compositions, whereas the later sentence was served after the song "L.O.V.E." had already been used by Miller. Page Decl., Ex. E at 95. Thus Chambliss' recollection appears to be in error. Chambliss' timing is not only internally inconsistent, it is also contradicted by the testimony of Miller, who dates the transfer to either late 1998 or early 1999. *Id.* at 98. Neither Chambliss nor Miller provides any further details or specific terms of the oral transfer. They both testify simply that Chambliss orally transferred all the songs he had ever written to Miller.

Furthermore, the existence of the alleged oral agreement was unknown to any of the other parties involved in this lawsuit until Miller's deposition on December 9, 2003. In Chambliss' deposition testimony, which both confirms the oral transfer and makes reference to a written agreement memorializing that transfer, Chambliss was unable to recall the day, or even the month, in which he executed the written agreement, despite the fact that the written agreement is dated June 23, 2004, the day before the Chambliss deposition was taken. Page Decl., Ex. L at 114, Page Decl., Ex. O. Nor was he able to recall which songs were listed in the written

agreement, or whether these songs had already been used or would be used sometime in the future. Page Decl., Ex. L at 115-116. Finally, Davis maintains that Chambliss told her, in the presence of a witness, Catherine Ottaviani, that she could have all the songs they had co-written, that those songs were hers to keep and to do with them as she wished. Page Decl., Ex. E at 184. Taken together, these inconsistencies amount to a factual issue that must be resolved by a finder of fact. In resolving all ambiguities and drawing all inferences against Defendants, as the movants, I conclude that a reasonable jury could find an oral agreement never existed between Chambliss and Miller.

Since a genuine issue exists as to whether Chambliss ever orally transferred his rights in the Prior Compositions to Miller, the Court need not consider whether the Written Agreements are sufficient to satisfy the writing requirement as a written ratification of a prior oral transfer.

Defendants contend, however, that even if there was no prior oral transfer, thus making the June 23, 2004 agreements the first transfer by Chambliss to Miller, the written agreements would nonetheless be valid to defeat Davis' claims. I agree. Defendants argue that, as a co-owner of the copyright in the Disputed Compositions, Chambliss may grant a retroactive license to the works that cures past infringement. The Written Agreements, defendants claim, serve to retroactively transfer the Disputed Compositions to Miller. Defendants argue that, having effected authorization from one joint copyright owner, they are immunized from any copyright infringement action brought by the other joint owner.

Despite the factual questions that abound as to any prior oral agreement between Chambliss and Miller, there exists no genuine issue as to the intent of co-author Chambliss to transfer his rights to Miller, nor his realization of this intent in the Written Agreements of June

8

23, 2004. Lower court opinions on this question, including those of this court, are generally in agreement. Where there is no dispute between transferor and transferee of a copyright as to the validity of the transfer, such a transfer has been consistently upheld. This is the case even where the license or transfer takes place after the institution of an action for copyright infringement, and indeed, even where the plaintiff in the action is the other co-owner of the copyright and the retroactive license or transfer by one co-owner serves to bar the infringement claim of the other co-owner. *See Country Road v. MP3.COM, Inc.* 279 F.Supp.2d 325 (S.D.N.Y. 2003) (settlement agreement between defendants and co-owner granting defendant retroactive reproduction rights barred any infringement claim by remaining co-owners and cured any past infringement); *Copyright.net Music Publishing LLC v. MP3.COM*, 2003 WL 740757 (S.D.N.Y. March 4, 2003) (same); *Silverstein v. Fox Entertainment Group, Inc.*, 2004 WL 1620895 (S.D.N.Y. July 19, 2004) (retroactive license, obtained after alleged infringement occurred and after institution of legal action, immunized defendant from infringement); *Lone Wolf McQuade Assocs. v. CBS Inc.*, 961 F. Supp. 587, 597 (S.D.N.Y.) (retroactive license cures past infringement); *Tuff-N-Rumble Mgmt., Inc.*, 2000 WL 1808486 (E.D. La. Dec. 8, 2000) (co-owner's grant of retroactive license to co-defendant during litigation barred plaintiff's infringement claims).

In *Silverstein v. Fox Entertainment*, a publicist commissioned an artist to create an animated character, for use in a variety of campaigns. Shortly thereafter, as the publicist began to promote the animated character, she discovered that Twentieth Century Fox was producing a similar character for use in an animated feature film. The publicist initiated suit against Fox, seeking to enjoin the film company from distributing or displaying any products featuring the animated character. In the course of the litigation, it came to light that the animated character was

9

copied entirely from a copyrighted beaver created by a clip art company, which in turn had hired

an artist to draw the character for the company. The artist and the clip art company each owned

an undivided one-half interest in the animated character. The publicist purchased the artist's

rights in and to the animated character retroactive to the date of creation. In order to avoid

liability to the publicist, Fox subsequently entered into an agreement with the clip-art company

for a non-exclusive license, retroactive to the creation of the animated character. The publicist

attempted to maintain her suit against Fox. The court found, however, that both plaintiff and

defendant had a right to use the animated character, through the retroactive transfer and

retroactive license respectively. Judge Holwell's opinion explains:

> There can be no copyright infringement action by a holder of a
> copyright against a licensee of another holder of the same copyright.
> The retroactivity of the licensing agreement between [the clip art
> company] and Fox has no necessary effect on its power to immunize
> Fox against claims of infringement of the Beaver copyright. A
> retroactive license *can cure past infringements*."

2004 WL 1620895, at *9 (citations and internal quotation marks omitted) (emphasis added). *A*

*fortiori,* the same result obtains in the case of a retroactive complete and total assignment, which

is the situation presented by the case at bar, even if one assumes that there was no prior oral

agreement between Chambliss and Miller.

The reason for this seemingly draconian outcome is that a co-owner has a legal right to grant

a license in a work without another co-owner's permission or to transfer his rights in the copyright

freely. *See* 1 Nimmer § 6.11. Absent an agreement to the contrary, one joint owner may always

transfer his interest in the work to a third party, including the grant of non-exclusive licenses. Only

an exclusive license requires the consent of any other joint owners, because such a license would

have the effect of transferring the other joint owners' interest to a third party. *Id.* A joint author is entitled only to an accounting of his share of the profits for the other joint author's use of the joint work. *See Thompson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998). "[A]n action for infringement between joint owners will not lie because an individual cannot infringe his own copyright." *Weissman v. Freemen*, 868 F.2d 1313, 1318 (2d Cir. 1989).

In the case at bar, Davis' status as joint owner with Chambliss, who in turn transferred his interests to Miller, bars her from stating a claim for copyright infringement against Miller, or any of the other defendants, his licensees. *See Weissman*, 868 F.2d at 1318; *McKay v. Columbia Broad Sys., Inc.*, 324 F.2d 762, 763 (2d Cir. 1963) ("a license from a co-holder of a copyright immunizes the licensee from liability to the other co-holder for copyright infringement") (internal citations omitted).

Davis relies on only two copyright cases, in urging the Court to rule against a retroactive transfer. One of these, in this district, *David v. Showtime/The Movie Channel, Inc.*, 697 F.Supp. 752 (S.D.N.Y. 1988), is inapposite. That case involved a retroactive *application* to plaintiffs for a license, as prescribed by a longstanding consent decree between plaintiffs and the Department of Justice. Defendants' license had expired several years earlier, however both parties entered into lengthy negotiations intending to renew their licensing agreements. *Id.* at 744. When the parties could not agree on a new licensing rate, defendants made a written application to plaintiffs to become licensed again, intending this license to be retroactive to the date of the last license's expiry. *Id.* at 755. The court refused to construe defendants' application for a retroactive license as a bar to plaintiff's claim for copyright infringement over the intervening years between expiration of the first license and the later application for a renewal. *Id.* at 764. The only other opinion cited by Davis involving copyright infringement claims, *Leicester v. Warner Bros.*, 1998 WL 34016724 (C.D. Cal. May 29, 1998), was

decided principally on the ground that the defendant possessed a non-exclusive license, and therefore did not have a right to sub-license others. *Leicester v. Warner Bros.*, 1998 WL 34016724, at *5.[4]

Perhaps recognizing this state of the law and its consequences for her case, Davis urges the Court to invalidate the Written Agreements on the basis that the agreements are unsupported by consideration. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 19. This argument has little merit. Davis has no standing to contest the Agreements' validity. *cf. Co. of Tioga v. Solid Waste Indus., Inc.*, 178 A.D.2d 873, 577 N.Y.S.2d 922 (3d Dep't 1991) ("We initially reject [the] argument that as a judgment creditor [of co-defendant] it has standing to raise the affirmative defense of lack of consideration in the foreclosure action because it is a necessary party to the action. This affirmative defense is personal to the parties to the contract, and...a stranger to the mortgage and the underlying contract, may not assert it"). Furthermore, "parties to a contract are free to make their bargain, even if the consideration exchanged is grossly unequal or of dubious value." *Minuteman Press Int'l, Inc. v. Matthews*, 232 F.Supp.2d 11, 16 (E.D.N.Y. 2002), *quoting Apfel v. Prudential-Bache Secs., Inc.*, 81 N.Y.S.2d 470, 475, 600 N.Y.S.2d 433, 435 (1993); *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 58 F.Supp.2d 228, 252 (S.D.N.Y. 1999).[5]

---

[4] The court later stated that it rejected the defendant's argument "for another reason," explaining that it did not accept the idea that a later grant of a license could validate earlier infringement. *Id.* at *6. That alternative ground for decision is contrary to the great weight of authority cited in text, and I decline to follow it.

[5] Moreover, it appears that no consideration is required under federal law to effectuate a copyright transfer, unless such consideration is required by the transaction itself. 3 Nimmer §10.03.

Davis is unable to provide factual evidence to contradict Chambliss' written agreement, verified in his deposition testimony, as to his intent and transfer of his right in the Disputed Compositions to Miller. As a matter of law, Davis' copyright infringement claim is barred.

## C. Declaratory Judgment Claim

Since Davis has no claim for copyright infringement against defendants, her claim for declaratory judgment must also be denied. Davis' status as joint owner not only bars her from stating a claim for copyright infringement, it also precludes a declaration that Davis has any ownership interest in the Album Compositions. A non-participating co-owner acquires no property rights in a newly created derivative work. *See Weissmann v. Freeman*, 868 F.2d 1313, 1318 (2d Cir. 1989); *Maurizio v. Goldsmith*, 84 F.Supp.2d 455, 467 (S.D.N.Y. 2000). Since Miller is a co-owner of the Disputed Compositions, he is authorized to incorporate them into derivative works. Davis cannot obtain a property interest in the derivative works solely on the basis of her co-ownership of the Disputed Compositions.

## D. State Law Claims

Plaintiff's remaining claims are asserted under state law. Where, as here, all federal law claims are dismissed before trial, "the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." *See Silverstein*, 2004 WL 1620895, at *9 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). I therefore decline to exercise jurisdiction over the remaining state law claims.

## III. CONCLUSION

For the foregoing reasons, the first, second and third claims alleged in the complaint are dismissed with prejudice. Because the Court declines to assert subject matter jurisdiction over the fourth, fifth and sixth claims, they are dismissed without prejudice.

It is SO ORDERED.

Dated: New York, New York
November 22, 2005

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE